```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,        :
          Plaintiff
                                 :

          vs.                    : CRIMINAL NO.  1:CR-02-187-07

                                 :
DONNEIL SPURLOCK,
          Defendant              :
```

*M E M O R A N D U M*

I.  *Introduction*

Defendant, Donniel Spurlock, has filed a pro se motion for reduction of his sentence under 18 U.S.C. § 3582(c) pursuant to Amendment 706 to the sentencing guidelines, which generally reduces the base offense level for crack cocaine offenses by two levels. The Federal Public Defender was later appointed to represent Defendant and has filed a sentencing memorandum on his behalf.

The government opposes the motion on the following grounds. First, Defendant does not qualify for a reduction because his sentence was established in part by his status as a career offender. Second, in any event, we should not exercise our discretion under section 3582(c)(2) to reduce Defendant's sentence given his criminal history and the drug quantity involved in his offense. Third, the amendment could not have

been intended to apply to a "large-scale" career offender whose offense level (because of the large quantities involved) was determined by drug quantity rather than career offender status when another career offender cannot benefit from the amendment because his offense level was determined by his career offender status. Fourth, regardless of the amendment's intent, we should exercise our discretion to avoid this unfair disparity between a large-scale and small-scale career offender by denying a sentence reduction for Defendant.

II.   *Background*

In October 2002, Defendant and others were named in an eight-count superseding indictment. He was charged with conspiracy to distribute or possess with the intent to distribute crack cocaine in violation of 21 U.S.C. § 846, and with possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841.

On January 14, 2003, Defendant executed a written plea agreement in which he agreed to plead guilty to a superseding information charging him with distribution and possession with the intent to distribute an unspecified quantity of crack cocaine. This offense has a statutory maximum sentence of twenty years. 21 U.S.C. § 841(b)(1)(C). In turn, the government agreed to recommend a three-level reduction in his offense level for

acceptance of responsibility if warranted and to file a motion for downward departure under U.S.S.G. § 5K1.1 if it believed Defendant had provided substantial assistance. On January 23, 2003, Defendant pled guilty.

A presentence report (PSR) was prepared, with a calculation of Defendant's guideline range using the guidelines in effect on August 29, 2003. At that time, section 2D1.1 provided a base offense level of 38 for crack-cocaine offenses involving at least 1.5 kilograms.[1] In paragraph 30 of the PSR, the probation office concluded that Defendant "was conservatively involved with more than one and one-half kilograms of crack cocaine." In  paragraph 35 of the PSR, which set forth Defendant's base offense level of 38, the probation office concluded that Defendant's drug quantity "far exceeded" one and one-half kilograms, based principally on factual assertions of two named witnesses. One witness stated he had seen two kilograms of powder cocaine being cooked into crack cocaine at Defendant's house. Another witness talked about supplying Defendant with five to six ounces of powder or crack cocaine per week beginning in the summer of 1998 and continuing through August 2002. Other witnesses, left unnamed, were also mentioned as having information relevant to Defendant's drug

---

[1] With the changes made in section 2D1.1 by Amendment 706, level 38 now requires a crack-cocaine quantity of at least 4.5 kilograms.

quantity. (PSR ¶ 35). Three points were subtracted from this level for acceptance of responsibility under U.S.S.G. § 3E1.1(b)(1) and (2), resulting in a total offense level of 35. (PSR ¶ 32).

    The PSR acknowledged that Defendant was a career offender because he had committed the offense while having at least two adult felony convictions for controlled substance offenses and crimes of violence. The report noted that under U.S.S.G. § 4B1.1, the career offender guideline, the twenty-year maximum sentence normally called for a total offense level of 32. However, because Defendant's total offense level was otherwise calculated as 35, the greater number prevailed and he was assigned a total offense level of 35. *See* U.S.S.G. § 4B1.1(b)(providing that the offense level for a career offender was that from section 4B1.1 only if "the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable").

    Under section 4B1.1(b), as a career offender, Defendant was assigned a criminal history category of VI. (PSR ¶ 51).[2] This made Defendant's guideline range 292 to 365 months, but because the statutory maximum sentence was 240 months, under

---

[2] Otherwise, his criminal history category would have been V. (*Id.*).

4

U.S.S.G. § 5G1.1(a) Defendant's guideline range became the statutory maximum.

The government moved for a downward departure under section 5K1.1 based on Defendant's substantial assistance, specifically recommending a thirty percent departure to 168 months. At sentencing on September 18, 2003, this motion was granted, and Defendant was sentenced to 168 months' imprisonment. Defendant had submitted objections to the PSR, one of which contested his role in the offense by arguing against certain drug quantities attributed to him. The objections were withdrawn after the court indicated it was going to grant the downward-departure motion. (Doc. 349, minute sheet for sentencing; sentencing transcript at p. 2). The court made no finding of a specific drug quantity.

In January 2004, the government filed a motion for reduction of sentence under Fed. R. Crim. P. 35(b). In that motion, the government requested that Defendant receive an additional twenty percent reduction of sentence in recognition of his substantial assistance. On January 22, 2004, this motion was granted, and Defendant's sentence was reduced an additional twenty percent to 134 months' imprisonment.

In September 2004, the government filed a second motion under Rule 35(b) for reduction of sentence. In that

motion, the government requested an additional ten percent reduction, again in
recognition of Defendant's substantial assistance. This motion was granted on September 27, 2004, and Defendant's sentence was reduced by ten percent to 123 months' incarceration.

On December 17, 2007, Defendant filed his pro se motion under 18 U.S.C. § 3582(c)(2) to reduce his sentence based on Amendment 706 to the sentencing guidelines. Amendment 706 modified U.S.S.G. § 2D1.1, generally decreasing "by two levels the base offense levels for crack cocaine offenses." *United States v. Wise*, 515 F.3d 207, 219 (3d Cir. 2008). The motion also argued that under *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), we can reduce the sentence even further than what the amendment calls for, to a sentence we deem reasonable.

As noted, the government opposes the motion. The probation office has submitted an addendum to the PSR. The addendum asserts that the court found that Defendant "was involved with at least 30 kilograms of crack cocaine." Based on this drug quantity, the probation office calculates that no reduction is proper because Amendment 706 has no effect on Defendant's guideline range.

III. *Discussion*

The United States Sentencing Commission has authority to amend the guidelines, 28 U.S.C. § 994(o), and to provide that any amendment has retroactive effect. *Id.*, § 994(u). Under 18 U.S.C. § 3582(c)(2), a defendant can seek the benefit of an amendment by a motion to modify his sentence. Any sentence reduction must take into account "the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable" and "must be consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

U.S.S.G. § 1B1.10 (Policy Statement)(effective March 3, 2008) is the applicable policy statement. In pertinent part, it provides that under section 3582(c)(2) a court "may reduce the defendant's term of imprisonment" "when the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines manual listed in subsection (c) below." *Id.*, § 1B1.10(a)(1). Amendment 706 is listed in subsection (c). However, "[a] reduction is not consistent with [the] policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." *Id.*, § 1B1.10(a)(2)(B).

7

In determining the effect of the amendment on the defendant's sentence, and essentially to determine whether it lowers his applicable guideline range, the court:

> shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

*Id.*, § 1B1.10(b)(1). The court "shall not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range . . . ." *Id.*, § 1B1.10(b)(2)(A). However, in pertinent part, if the defendant had been sentenced to a term of imprisonment "less than the term of imprisonment provided by" his guideline range at the time of the original sentencing, "a reduction comparably less than the amended guideline range determined under [§ 1B1.10(b)(1)] may be appropriate." *Id.*, § 1B1.10(b)(2)(B).

In opposing Defendant's motion, the government argues as follows. First, by its terms Amendment 706 provides relief for a defendant whose sentence was based solely on crack-cocaine quantity, not for a defendant, like Spurlock, "whose sentence is, in part, a product of his own career offender status." (Doc.

600, Govt.'s Sentencing Memo. at 6). In the language of section 1B1.10(a)(2)(B), as this argument goes, the amendment does not apply to Defendant because it "does not have the effect of lowering [his] applicable guideline range." In support, the government points to section 1B1.10's application note 1(A) which explains, in pertinent part, that an amendment, even if applicable, will not lower the applicable guideline range if the guideline range is actually set because of "the operation of another guideline or statutory provision . . . ." (Doc. 600, Govt.'s Sentencing Memo. at 9). The example given in the application note is a sentence imposed because of U.S.S.G. § 5G1.1(b), which requires the imposition of the statutory mandatory minimum term if it is "greater than the maximum of the applicable guideline range." The government maintains that the circumstances here are analogous, but that here it is the career offender guideline that established the sentence, trumping section 2D1.1's use of drug quantity to set the applicable guideline range.

> Concluding this argument, the government asserts:
>
> [I]t is undisputed that Spurlock's guidelines imprisonment range was not based solely upon the quantities of drugs distributed by this recidivist. Rather, that sentence was in large measure a product of the simple, immutable fact that Spurlock was, and remains, a Career Offender, a felon with a significant prior record. Since these retroactive amendments do not affect the

>       Career Offender guidelines, Spurlock is not
>       entitled to a belated sentence reduction
>       under these amendments.

(Doc. 600, Govt.'s Sentencing Memo. at 11).

Second, the government argues that we should not apply the amendment to Spurlock because Defendant cannot show that his early release would not adversely affect public safety, given his "significant criminal record." (*Id.*, p. 13). In support, the government cites application note 1(B) to section 1B1.10 which requires the court "to consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment . . . ."

The government also makes two related arguments against Defendant's request for a reduction. It argues that the Commission could not have intended the amendment to apply to a career offender if, as Spurlock did here, he "dealt in such large quantities of crack cocaine that the drug weights did, in some measure, affect his guidelines imprisonment range . . . ." (Doc. 600, Govt.'s Sentencing Memo. at 11). This would grant a "windfall" to the large-scale career offender that would not be available to the "small-scale" career offender who will not get any relief under the amendment. (*Id.* at 12). The government also argues, regardless of the intent of the Commission, that this windfall justifies an exercise of our discretion to deny Defendant's motion.

10

These last two arguments can be understood by acknowledging that a defendant who qualifies as a career offender often (because of that status) has his total offense level set by operation of section 4B1.1 higher than it would be if set by his drug quantity. In contrast, another career offender (like Defendant) has his offense level set by his drug quantity, if the quantity is large enough, not by his career offender status. Amendment 706 comes into play for the latter because it modified drug quantity calculations, and had no impact on career offender status; hence, the government's argument that a large-scale career offender should not benefit from Amendment 706 when a small-scale career offender would not (because the latter's total offense level would be set by his career offender status, not his drug quantity).

In responding to the government's arguments, Defendant contends that career offender status does not by itself disqualify a defendant from seeking a reduction under Amendment 706. He asserts that a defendant can be a career offender and still be entitled to a reduction under the amendment if his sentence was based on drug quantity and not on career offender status. Defendant sets forth the calculation of his own original guideline range to support his position that the sentence was driven by drug quantity.

We need not review Defendant's argument in detail. We agree with him that the government is mistaken that Amendment 706 does not apply to him merely because he is a career offender or because his career offender status played some part in establishing his guidelines range. Section 1B1.10 does not categorically exclude career offenders and to determine if Defendant is eligible for a reduction under it, we should simply follow the Commission's directions in section 1B1.10.[3] As noted, that policy statement tells us not to reduce Defendant's sentence if Amendment 706 "does not have the effect of lowering [his] applicable guideline range." *Id.*, § 1B1.10(a)(2)(B). And in determining whether it lowers his applicable guideline range, we simply replace the amendment "for the corresponding guideline provisions that were applied when the defendant was sentenced and . . . leave all other guideline application decisions unaffected." *Id.*, § 1B1.10(b)(1).[4]

---

[3] We thus reject the argument that the Commission did not "intend" that the amendment apply to career offenders. We discern the Commission's intent from section 1B1.10 and Amendment 706. We also reject the government's public-policy argument concerning a windfall for large-scale career offenders.

[4] This is also the approach of those courts that have decided that career offender status renders the amendment inapplicable to a defendant, but only after running the calculations in conformity with section 1B1.10(a)(2)(B) and (b)(1) and determining that the amendment did not lower the applicable guideline range. *See*, *e.g.*, *United States v. Harris*, No. 04-CR-52, 2008 WL 821980, at *2 (M.D. Fla. Mar. 26, 2008); *United States v. McDougherty*, No. 88-CR-504, 2008 WL 752597, at *5 (C.D. Cal. Mar. 18, 2008); and *United States v. White*, No. 97-0028, 2008 WL 724171, at *1 n.4 (W.D. Vir. Mar. 17, 2008).

In doing so, Amendment 706 does have the effect of lowering Defendant's applicable guideline range. To begin with, we agree with Defendant that if any drug quantity was determined during his original sentencing proceedings, it was a quantity in excess of 1.5 kilograms but less than 4.5 kilograms of crack cocaine.[5] This entitles Defendant to a base offense level of 36, in line with the general decrease of two levels accomplished by the amendment. With a base offense level of 36, Defendant's total offense level is 33, after the three-point reduction for acceptance of responsibility. Because this total offense level is higher than the offense level of 32 that would be assigned to a career offender facing a maximum sentence of twenty years, it becomes Defendant's total offense level. With a criminal history category of VI based on Defendant's career offender status, Defendant's recalculated (or amended) guideline range is 235 to 293 months. The bottom end of this range is lower than the 240-month statutory maximum from which the court departed in imposing the original sentence of 188 months. If we decide that Defendant's sentence should be the lower end of this range, 235 months, and grant Defendant the corresponding reductions in his

---

[5] We do not know how the probation office concluded that we had found that Defendant's drug quantity was thirty kilograms.

13

sentence that we gave him on his original sentence, his sentence could be reduced from 123 months to 119 months.[6]

We have decided to grant this reduction. The government argues we should exercise our discretion to deny it because Defendant's release would adversely affect public safety, given his "significant criminal record."[7] We would be more inclined to consider institutional infractions as bearing on Defendant's risk to public safety, but the government presents us with none. Moreover, Defendant's pro se motion lists the educational courses he has taken while in prison. We thus do not think that public safety (or Defendant's postconviction conduct) are reasons to deny his motion.

We have also considered other relevant factors set forth in 18 U.S.C. § 3553(a) and that they also do not counsel

---

[6] Defendant reaches the same result,, using an overall 49 percent reduction from the original sentence.

[7] Defendant does have a simple-assault conviction for an offense that occurred about fourteen years ago.

against a reduction. We will therefore grant a reduction in sentence of four months.[8]

                                                                /s/William W. Caldwell
                                                                 William W. Caldwell
                                                                 United States District Judge

Date: April 18, 2008

---

[8] Defendant's pro se motion also sought a reduction under *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). A motion under section 3582(c) is limited to consideration of the effect of the retroactive amendment on the defendant's sentence. *See United States v. McBride*, 283 F.3d 612, 615 (3d Cir. 2002); *see also United States v. Sanchez*, 140 Fed. Appx. 409, 410 (3d Cir. 2005)(per curiam) (nonprecedential). Defendant therefore cannot invoke *Booker* here.

```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,          :
         Plaintiff
                                   :

         vs.                       : CRIMINAL NO.  1:CR-02-187-07

                                   :
DONNEIL SPURLOCK,
         Defendant                 :
```

*O R D E R*

AND NOW, this 18th day of April, 2008, it is ORDERED that:

   1.  Defendant, Donneil Spurlock's, motion(doc. 596) under 18 U.S.C. § 3582(c)(2) is granted as follows.

   2.  Pursuant to 18 U.S.C. § 3582(c)(2), Defendant's previously imposed sentence of 123 months (imposed on September 27, 2004) is reduced to a sentence of 119 months of imprisonment.

   3.  Except as provided herein, all provisions of the original judgment of sentence, dated September 18, 2003, shall remain in effect.

                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge